UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE CAMPBELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 13 C 9298 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| STEPHANIE DORETHY, Warden, ) | |
| Hill Correctional Center,[1] ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Petitioner Steve Campbell, who is currently incarcerated at Hill Correctional Center, is serving a thirty-eight-year sentence for first degree murder, which was imposed concurrent with a six-year sentence for aggravated discharge of a firearm. Campbell has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Campbell alleges that (1) his trial counsel was ineffective in failing to argue during trial and sentencing that Campbell suffered from mental illness when he committed the crimes, and (2) his appellate counsel was ineffective for failing to raise trial counsel's failure to assert the mental illness issue. Because Campbell procedurally defaulted the issue with respect to his trial counsel's failure to raise his mental health at trial and the remaining grounds fail on the merits, the Court denies Campbell's petition and declines to issue a certificate of appealability.

## BACKGROUND

The state court's factual findings are presumed to be correct for the purposes of habeas review, as Campbell has not presented clear and convincing evidence to the contrary. *See* 28

---

[1] Stephanie Dorethy is presently the warden at Hill Correctional Center and is substituted as the proper Respondent in this matter. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Bridges v. Chambers*, 425 F.3d 1048, 1049–50 (7th Cir. 2005); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007); *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015). Furthermore, the Court has reviewed the record and confirmed that it supports the state court findings. The Court therefore begins by summarizing the following facts relevant to Campbell's petition, as drawn from the state court record.

I.  **Campbell's Trial and Conviction**

Following a bench trial, the state trial court judge convicted Campbell of the first degree murder of his former girlfriend Sheila Hudson, and of aggravated discharge of a firearm for shooting at Hudson's brother, Chris.

The evidence at trial showed that Hudson and Campbell had been in a romantic relationship for approximately ten years prior to the murder and had three children together. Campbell had also been in a relationship with another woman, Brenda Brooks, at the same time. At the time of the murder, Campbell was no longer in a relationship with Hudson but was still seeing Brooks. Campbell testified that he was angry that Hudson was spending time with gay people and exposing his children to these individuals. Hudson also had a new boyfriend, Darren Robinson, at the time of the murder.

On the morning of the murder, September 9, 1998, Campbell went looking for Hudson. He eventually learned that she was at a store at Grand and Central in the Belmont Central neighborhood in Chicago, Illinois. Robinson was also with her at the store.

Mark Murray, a store worker, who had known Campbell for five years, testified that Campbell came into the store carrying a gun, ran up to Hudson, and grabbed her arm. Murray testified that Campbell said something to the effect of "Come on, bitch. You are coming with me." Doc. 12-1 at 360. Hudson declined, after which Campbell pulled out the gun and fired,

2

standing approximately a foot from Hudson as he shot. Although the first shot went into the floor, the second shot struck Hudson in the stomach. Campbell then turned and put the gun to Murray's head. But the gun did not fire, as it apparently jammed. Campbell then said, "Mark, I can't shoot you," and ran out of the store. *Id*. at 361.

A second worker in the shop, Michael Giddens, also testified that when he heard the gunshots, he looked up and saw Campbell holding the gun. Hudson's boyfriend, Robinson, also testified that he was present at the store when Campbell approached and shot Hudson. Robinson recalled Campbell saying to Hudson something to the effect of "I told you I was going to kill [you] if you leave me." *Id.* at 363; Doc. 12-2 at 10. As Campbell began shooting, Robinson fled to a neighboring store to call for help.

Robinson's cousin, Cecilia Woods, also testified. She had driven Hudson and Robinson to the store and was waiting outside in the car. Campbell, who knew Woods, asked her where Hudson was before going into the store. Woods responded that she did not know and then saw Campbell walk into the store. Five minutes later, people started running out of the store screaming. Woods went into the store and saw Hudson's body on the ground. Woods then saw Campbell leave the store and drive off in his car.

Campbell testified that he was depressed and drinking heavily the night before the shooting. He claimed that he continued to drink heavily as early as 9:00 a.m. on the morning of the shooting. Woods, however, testified that Campbell's eyes were not bloodshot, and she did not smell alcohol on him when he approached her before going into the store. Campbell further testified that he was hearing voices when he entered the store. He conceded that he pulled out the gun in the store and admitted that the gun went off when he was holding it. But he claimed the gun was pointed at the floor and that he then dropped the gun. Campbell stated he was a "in

3

a daze, shaking" when the gun fired. Doc. 12-1 at 308. Campbell also claimed that he blacked out after the shooting.

After shooting Hudson, Campbell drove to her brother's house, where he found Chris, Hudson's brother, on the front porch. Campbell confronted Chris, asking him why he had lied about Hudson. Campbell fired a shot at Chris, which missed Chris but struck the porch stairs. Campbell then drove off.

Campbell eventually made his way to Brooks' mother's house, where Brooks found him intoxicated. But Brooks testified that prior to the shooting, she had not seen Campbell drinking nor had she smelled alcohol on him. Campbell said to Brooks, "Brenda, Brenda, help me. . . . I tried to shoot Sheila in the leg . . . but the gun got jammed up and I think I shot her in the stomach." *Id*. at 193. Brooks also testified that Campbell said, "Y'all don't know what Sheila was doing. . . . She was hanging out in gay bars and having my children with lesbians and she was prostituting and she was just hanging out." *Id*. at 196. Campbell was taken to the hospital later that day, where the treating emergency room doctor determined that he had a blood alcohol level of .157 and mild metabolic acidosis due to intoxication. After the police arrested Campbell, they searched Brooks' mother's house and found the murder weapon there.

Campbell received a mental health evaluation prior to trial. The evaluating psychiatrists opined that Campbell was both legally sane when he committed the crimes and that he was fit to stand trial with medication. The psychiatrists noted that Campbell was taking Zoloft, an antidepressant, at the time of their evaluation. They also noted that Campbell's medical records suggested an altered mental state when he was admitted to a hospital emergency room later on the day of the murder but that this was due to his consumption of alcohol after the crime.

The psychologists opined that Campbell's claims of psychotic symptoms "are not credible and they are strongly contradicted by his record." Doc. 12-2 at 316, 318. The report went on to state that "[t]here is a possibility of mild depression," but that Campbell "does not suffer [from] any major mental disease or defect." *Id*. Although Campbell was diagnosed with possible alcohol abuse, depression, and borderline personality disorder, there was an additional diagnosis of malingering.

Defense counsel argued at trial that Campbell did not intend to shoot Hudson. Instead, defense counsel emphasized Campbell's testimony that he was "in a fog, a daze," "distraught" over what was happening to his children, and had been drinking to address his depression. *Id*. at 350–51. Defense counsel pointed out that Campbell drank so much that he ended up in the hospital. He also argued that Campbell had initially carried the gun for self-defense purposes because he was concerned that Robinson might attack him, although there is no evidence in the record that Robinson or anyone else attempted to attack Campbell on the day of the shootings.

The trial court, as the finder of fact, rejected Campbell's testimony in finding Campbell guilty:

> [Campbell] testified at length . . . for over an hour as to all of his excuses about how this was an accident and he didn't mean to shoot Sheila and the gun just went off accidentally and he was having hallucinations, he was drunk and on and on and on it goes. The only thing consistent about his testimony on direct and cross-examination was how unbelievable it was in its totality. [Campbell] lied on the witness stand. This was a cold and calculated and brutal tragedy caused by [Campbell]. He shot down the mother of his three children because of his jealousy and his rage. The evidence overwhelmingly establishes that fact.

*Id*. at 364.[2]  In finding Campbell guilty, the trial court noted that the "evidence is overwhelming" and Campbell was "caught red-handed for lack of a better way of describing it." *Id*. at 358–59. The court found the state's witnesses to be credible and concluded that Campbell was not intoxicated when he committed the crimes but only began drinking after murdering Hudson and shooting at her brother.

Following Campbell's conviction, a presentence investigation report was prepared, which detailed Campbell's background and included the results of his pretrial mental health exams, which explained that he had depression but was not suffering from a major mental health issue. At sentencing, defense counsel suggested that the court should impose a sentence below the maximum because Campbell's actions were an "abnormality." *Id.* at 386.  Counsel argued that some unknown trigger in Campbell's life had caused this incident.  Counsel also referenced the "psychological report" that was "contained in his presentence report" as perhaps providing insight into Campbell's conduct.  *Id*.

In imposing a thirty-eight-year sentence on the first degree murder conviction and a concurrent six-year sentence on the aggravated discharge of a firearm conviction, the trial court explained that it had reviewed the presentence investigation report and considered counsel's arguments.  Although the court noted its surprise that Campbell had acted as he had in light of his background, it characterized Campbell's conduct as "one of the most horrific crimes that has been brought to this Court's attention while assigned to the Criminal Division." *Id*. at 391.

## II. Direct Appeal

Campbell filed a direct appeal with the Illinois Appellate Court, but his appointed counsel sought to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct.

---

[2] The Court must defer to the finder of fact's credibility determinations.  *See Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

6

1396 (1967), arguing that no issues of merit existed warranting argument on appeal. The Illinois Appellate Court agreed. Doc. 12-4. Campbell did not file a petition for leave to appeal ("PLA") with the Illinois Supreme Court.

### III.     State Post-Conviction Proceedings

Campbell filed a petition for post-conviction relief pursuant to 725 Ill. Comp. Stat. 5/122-1. Campbell asserted that (1) his trial counsel was ineffective at sentencing for failing to argue mental illness as a mitigating factor, and (2) his appellate attorney was ineffective for failing to argue that his trial counsel was ineffective at sentencing. The trial court denied the petition. Campbell appealed to the Illinois Appellate Court. The Illinois Appellate Court found that neither of Campbell's claims had merit and affirmed. *People v. Campbell*, No. 1-11-0094, 2013 IL App (1st) 110094-U, 2013 WL 3947810 (2013). In so ruling, the appellate court noted that there were records in which Campbell claimed that he had experienced auditory hallucinations in 1996, had attempted suicide multiple times, and had been prescribed medication for his depression. *Id*. at *1. However, the court also noted the existence of other records from the same time period in which Campbell denied any emotional or mental health issues. *Id*. at *2. In rejecting Campbell's claims, the appellate court explained that the presentence investigation report detailed Campbell's mental health history, so trial counsel was not ineffective for failing to raise information already before the sentencing judge. *Id.* at *5–6. Because there was no ineffective assistance of trial counsel at sentencing, it followed that appellate counsel could not be ineffective for failing to raise the issue on appeal. *Id*. at *6.

Campbell filed a PLA with the Illinois Supreme Court, which the Illinois Supreme Court denied. Campbell then filed the present habeas corpus petition with this Court.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

## ANALYSIS

Campbell has asserted two grounds for relief: (1) trial counsel was ineffective in failing to introduce evidence of mental illness at trial and to argue mental illness as mitigation at sentencing, and (2) appellate counsel was ineffective in failing to argue trial counsel's ineffectiveness on appeal. Respondent argues that Campbell has procedurally defaulted his claim concerning trial counsel's ineffectiveness in failing to introduce evidence of mental illness as substantive evidence at trial. Respondent also argues that Campbell is barred from relitigating the remaining claims because the Illinois Appellate Court's decisions on those claims were not contrary to or an unreasonable application of clearly established Supreme Court law.

**I.     Procedural Default**

A petitioner must fairly present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). The petitioner must present the operative facts and controlling law of the claim before the state courts so that they have a meaningful opportunity to consider the claim before it is raised in federal court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). To be "fairly presented," a claim must be brought forth on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the petitioner has procedurally defaulted his claim and cannot present it for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Furthermore, although ineffective assistance of counsel is a single claim, Campbell must have raised the particular factual basis for each aspect of his ineffective assistance of counsel claim to preserve the respective argument. *Pole v. Randolph*, 570 F.3d 922, 934–35 (7th Cir. 2009). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [the petitioner] must have 'identif[ied] the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (second alteration in original) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). Thus, Campbell "cannot argue one theory [of ineffective

assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Id.*

Campbell did not raise his argument that trial counsel was ineffective for not raising his mental health during trial through one complete round of state court review. On direct appeal, Campbell did not exhaust any claims because he failed to bring a PLA. On post-conviction review, Campbell only raised his trial counsel's alleged ineffective assistance as to the failure to raise his mental health issues as a mitigating factor at sentencing. He did not argue trial counsel's alleged failure to raise the issue of his mental health during trial. Thus, Campbell has procedurally defaulted the argument.

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to

find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

Campbell cannot excuse his procedural default under either the cause and prejudice or the fundamental miscarriage of justice exceptions because he does not set forth any argument on either point in his reply. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001).

For completeness, the Court notes that it does not appear that the exceptions to procedural default would apply. Examples of cause include: (1) interference by officials making compliance impractical, (2) the factual or legal basis for the claim was not reasonably available to counsel, or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). The first two categories are not applicable to this case. As to ineffective assistance of counsel to excuse the default, Campbell must also raise an ineffective assistance of counsel argument regarding the failure to properly preserve his underlying ineffective assistance of counsel argument. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Campbell did not raise such a claim of ineffective assistance of counsel through one complete round of state court review,[3] however; therefore, this claim is also defaulted and cannot be used to save his ineffective assistance of counsel for failure to introduce mental health evidence at trial claim.[4] *See Gray v. Hardy*, 598 F.3d 324, 330 (7th Cir. 2010) ("But to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, [petitioner] was

---

[3] The only appellate counsel issue asserted in the state courts was appellate counsel's alleged failure to raise the mental health issue at sentencing.

[4] Additionally, as explained later in the Court's opinion, all of Campbell's ineffective assistance of trial and appellate counsel arguments are meritless.

required to raise the claims through one full round of state court review, or face procedural default of those claims as well.").

Finally, the principles set forth in *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), and *Trevino v. Thaler*, --- U.S. ----, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), are inapplicable because state law did not require Campbell to raise the underlying ineffective assistance of counsel claim on collateral review. *Long v. Butler*, 809 F.3d 299, 314–15 (7th Cir. 2015); *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014); *Toliver v. Pfister*, No. 13 C 8679, 2014 WL 4245788, at *5 (N.D. Ill. Aug. 27, 2014).

This leaves Campbell with the fundamental miscarriage of justice (actual innocence) gateway to excuse his default, which is a "demanding" and "seldom met" standard. *McQuiggin v. Perkins*, --- U.S. ----, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). Campbell must present new, reliable evidence that he did not present at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible claim of actual innocence. *House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006); *see also McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'" (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005))). Campbell has presented no new evidence to suggest he is actually innocent. Thus, Campbell cannot excuse his procedural default.

## II.     Substantive Merits of Campbell's Claims

Turning to the substantive merits of Campbell's ineffective assistance claims, the controlling Supreme Court decision is *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

12

80 L. Ed. 2d 674 (1984). In order to establish constitutionally ineffective assistance of counsel, Campbell must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. As for prejudice, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To show prejudice with respect to his sentence, Campbell must show that but for counsel's errors, "there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010). That probability is determined by evaluating "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding" and "reweig[hing] it against the evidence in aggravation." *Porter v. McCollum*, 558 U.S. 30, 41, 130 S. Ct. 447, 175 L. Ed. 2d 398 (2009) (quoting *Williams*, 529 U.S. at 397–98). The Court need not address both prongs of the *Strickland* test if one provides the answer; that is, if the Court determines that the alleged deficiency did not prejudice Campbell, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (citations omitted). Campbell has the burden to demonstrate ineffective assistance of counsel. *Id.* at 104.

### A. Evaluating Counsel's Performance as a Whole

Before turning to Campbell's individual arguments, the Court notes that it is required to evaluate counsel's performance as a whole when considering an ineffective assistance of counsel argument. *Smith*, 565 F.3d at 353. At the outset, the Court points out that there is nothing in the record to suggest that Campbell ever suffered from a major mental illness, as he claims. The experts who examined Campbell prior to trial opined that, at the most, he suffered from alcohol abuse, depression, and borderline personality disorder. These experts were aware of his prior medical records in which he claimed to hear voices and attempted to commit suicide, as well as Campbell's other records in which he denied having any mental health problems. The psychiatrists suggested that Campbell's claims that he heard voices were likely false, and that he was a malingerer. There is nothing in the record to suggest that their diagnoses were inaccurate or that Campbell's medical history is incomplete. Campbell has thus failed to meet his burden to show ineffective assistance because there is nothing in the record to suggest that he was suffering from a mental illness that contributed to his crime or should mitigate his punishment, as he claims.

Furthermore, despite the fact that experts cast serious doubts on Campbell's mental health assertions, defense counsel still explored the issue of Campbell's mental health both at trial and during sentencing. Campbell testified on his own behalf, asserting that he heard voices when committing the crimes, was depressed, and had been abusing alcohol. Defense counsel thus presented Campbell's mental health to the finder of fact who, in turn, rejected Campbell's testimony as not credible. Campbell's mental health was also discussed at length in the presentence investigation report that the trial court considered prior to sentencing. The sentencing court explicitly stated that it had reviewed the presentence report in full, and defense

counsel referenced the report during sentencing. The sentencing judge was fully aware of Campbell's allegations of his mental health issues.

Despite the lack of evidence that Campbell heard voices or otherwise suffered from a major mental health issue, defense counsel still put the State to its burden of proving the case beyond a reasonable doubt. Defense counsel attempted to suggest that the shooting might have been an accident, and that Campbell did not form the requisite intent due to drinking alcohol and being depressed.[5] This was proper in light of the experts' reports suggesting that they did not believe Campbell's claim that he heard voices and that he only suffered from minor depression. *See United States v. Cronic*, 466 U.S. 648, 657 n.19, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (noting that defense counsel cannot create a defense when one does not exist but should still hold the prosecution to its burden of proof). Defense counsel also attempted to argue that Campbell's actions were out of character for mitigation purposes at sentencing. In sum, Campbell cannot demonstrate ineffective assistance of counsel at either trial or sentencing when reviewing counsel's performance as a whole. Finally, appellate counsel cannot be faulted for failing to raise the issues on appeal when trial counsel cannot be faulted for his performance at trial and sentencing. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."); *Guy v. Butler*, No. 14 C 08581, 2015 WL 6165147, at *9 (N.D. Ill. Oct. 19, 2015) (appellate

---

[5] Defense counsel's focus on intoxication was also a reasonable trial strategy. Voluntary intoxication is an affirmative defense in Illinois if it is so extreme as to suspend all reason. *McNary v. Lemke*, 708 F.3d 905, 920–21 (7th Cir. 2013) (citations omitted). Campbell claimed that he had been drinking a significant amount the night before and the day of the shooting. He had also been found to be disoriented due to his intoxication when taken to the hospital after the shooting. Unfortunately for Campbell, the trial court concluded, based on Brooks' and Woods' testimony, that he only began drinking after the crimes. Although defense counsel's efforts were ultimately unsuccessful, his trial strategy of focusing, in part, on Campbell's intoxication, was reasonable.

counsel's failure to argue that trial counsel was ineffective does not constitute ineffective assistance where underlying ineffective assistance of trial counsel claim is meritless).

## B. Campbell's Individual Arguments

Turning to Campbell's individual arguments, Campbell first argues that his trial counsel was ineffective for failing to raise the mental health issue at trial. Although as discussed above Campbell procedurally defaulted this issue, it also would fail on the merits. Trial counsel did raise the mental health issue to the extent possible despite the fact that there is no factual support in the record for Campbell's assertions that he suffered from a major mental health issue. Further, Campbell's claims of hearing voices would not have helped him avoid conviction at trial. The psychiatric experts concluded that Campbell was sane at the time of the crime and competent to stand trial. There is nothing in the record to rebut these factual findings of sanity and competency. Nor does Campbell argue that he acted in self-defense. In sum, Campbell believes that his alleged history of mental illness should mitigate his liability for his crimes. However, "[e]vidence of a longstanding mental illness is not a mitigating factor in the crime of murder, and therefore proof that [a defendant] was suffering from schizophrenia or another mental illness would not allow a jury to convict him of second degree murder rather than first degree murder." *Gutierrez v. Anglin*, 706 F.3d 867, 872–73 (7th Cir. 2013) (citing *People v. McDonald*, 769 N.E.2d 1008, 1019, 329 Ill. App. 3d 938, 264 Ill. Dec. 171 (2002)).

Instead, to mitigate a first degree murder charge to second degree, Campbell had to either (1) act under sudden and intense passion resulting from serious provocation by the individual killed, or (2) have an unreasonable belief in the need for self-defense. 720 Ill. Comp. Stat. 5/9-2; *Gutierrez*, 706 F.3d at 873. There is nothing in the record to suggest that Campbell was acting in

16

response to either sudden provocation or in self-defense. Campbell thus cannot demonstrate ineffective assistance counsel at trial.

The Court likewise rejects Campbell's argument that counsel was ineffective for failing to raise the mental health issue at sentencing. In adjudicating this argument, the Illinois Appellate Court properly identified the *Strickland* standard. *Campbell*, 2013 WL 3947810, at *4. Thus, the appellate court's decision is not "contrary to" clearly established federal law. The appellate court's decision was also not an unreasonable application of *Strickland*. Campbell was not prejudiced by counsel's performance at sentencing, for as the appellate court recognized, the relevant mental health information was presented to the sentencing court in the presentence investigation report. Moreover, the information was of minimal value to Campbell as it suggested he had suffered from minor depression and questioned his claim that he was hearing voices. The sentencing court explained it had reviewed the presentence investigation report in full and therefore had all the information before it. Defense counsel also referenced the mental health information in the presentence report during his argument at sentencing. As previously mentioned, Campbell's argument is based on a belief that he suffered from a mental illness that could have changed the outcome of his trial and sentence. But the record shows that Campbell was not suffering from a significant mental illness, and the court was aware of all relevant information when it imposed Campbell's sentence. The Court denies Campbell's claim of ineffective assistance of counsel at sentencing.[6]

---

[6] It should be noted that Campbell did not raise in the state courts, and does not argue in the present habeas corpus petition, that his trial counsel was ineffective for failing to investigate his mental health. The Court recognizes that defense counsel has an obligation to thoroughly investigate a defendant's background in order to discover relevant mitigating information. *Porter*, 558 U.S. at 39–40 (2009). In the instant case, however, there is no allegation by Campbell, or any suggestion in the record, that there was any mitigating information that defense counsel failed to uncover. As discussed above, the information in the record fails to support Campbell's claim of mental illness, and despite this, the mental

17

Finally, the Court rejects Campbell's argument of ineffective assistance of appellate counsel for failing to challenge trial counsel's performance. Appellate counsel cannot be faulted for failing to raise losing issues on appeal. *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States ex rel. Murithi v. Butler*, No. 14-v-3090, 2015 WL 1399511, at *12 (N.D. Ill. Mar. 23, 2015) ("Because the underlying errors Petitioner alleges were committed by trial counsel do not constitute ineffective assistance . . . it follows that the failure to base an appeal on such conduct is also not ineffective assistance."). The state court properly denied this argument as well.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The

---

health issue was still raised through Campbell's testimony at trial, and to the sentencing judge via the presentence investigation report.

18

question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that no showing of a substantial constitutional question for appeal because reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85)). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Campbell's petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 and declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Campbell is advised that this is a final decision ending his case in this Court. If Campbell wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Campbell need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Motions for reconsideration serve a limited purpose and are only appropriate to bring to the Court's attention a manifest error of law or fact or newly discovered evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

However, if Campbell wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Dated: December 23, 2016

SARA L. ELLIS
United States District Judge